FILED
2022 Aug-22  PM 01:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| FRANKENMUTH MUTUAL } | |
| INSURANCE COMPANY, } | |
| } | |
| **Plaintiff,** } | |
| } | **Case No.: 2:22-cv-00224-RDP** |
| **v.** } | |
| } | |
| TAYLOR BURTON CO., INC., a } | |
| Corporation, BLAKE PITTMAN, } | |
| an individual, RYAN GOOLSBY, } | |
| an individual, and 2805 WISTERIA } | |
| DRIVE, LLC, a limited liability company, } | |
| } | |
| **Defendants.** } | |

## <u>MEMORANDUM OPINION</u>

This case is before the court on Defendant Frankenmuth's Motion to Dismiss Plaintiffs' Counterclaims. (Doc. # 27). The Motion (Doc. # 27) has been fully briefed and is ripe for review. (Docs. # 27-1, 32, 33). After careful consideration, the court concludes that the Motion (Doc. # 27) is due to be granted in part and denied in part.

### I.    Background

In May 2019, Taylor Burton Company, Inc. ("Taylor Burton") agreed to serve as the general contractor for the construction of an office building for Ryan Goolsby, a State Farm agent. (Docs. # 8-1; # 8-2). In January 2020, a slope failure occurred at the construction site that resulted in damage to the property and a delay in construction. (*Id.*). On August 24, 2020, Taylor Burton received a $450,000 settlement demand from Goolsby for damage allegedly attributable to Taylor Burton's negligent performance of its obligations. (Doc. # 8-1). Taylor Burton notified its insurer, Frankenmuth, of the settlement demand. (Doc. # 20-1).

On November 24, 2020, Frankenmuth issued a reservation of rights letter to Taylor Burton. (Doc. # 8-2 at 1). The letter advised that Frankenmuth would attend a mediation requested by Goolsby and work to resolve any covered claims and/or damages, although it "strongly recommend[ed] that Taylor Burton and/or its personal counsel attend the mediation to protect its uncovered claims/damages." (Doc. # 8-2 at 19). Frankenmuth issued a second coverage letter on December 8, 2020 and a third on February 11, 2021 that similarly advised that it had retained coverage counsel to attend the mediation and encouraged Taylor Burton to retain personal counsel to protect any uninsured interests. (Docs. # 8-3; # 8-4).

On February 25, 2021, Frankenmuth and Taylor Burton attended the mediation in an attempt to resolve Goolsby's claims prior to litigation (the "Mediation"). (Doc. # 20 at 10). Taylor Burton has alleged that Frankenmuth never presented a counteroffer to the $450,000 demand nor made any attempt to negotiate a settlement. (*Id.*). To date, the parties have not reached a resolution.

After the Mediation was unsuccessful, on January 10, 2022, Goolsby filed a lawsuit against Taylor Burton and Blake Pittman (Taylor Burton's Vice President and Project Superintendent) in the Circuit Court of Jefferson County, Alabama, styled *Ryan Goolsby et al. v. Taylor Burton, Co. Inc. et al.*, (Case No. 01-CV-2022-900090) ("*Goolsby* Lawsuit"). (Doc. # 1-1). Frankenmuth is currently defending Taylor Burton in that lawsuit pursuant to a reservation of rights. (Docs. # 1 at 31; # 20 at 7).

On February 21, 2022, Frankenmuth filed suit in this court against its insured, Taylor Burton, seeking declaratory judgment that it has no duty to defend or indemnify Taylor Burton in the *Goolsby* Lawsuit. (Doc. # 1). Taylor Burton has since filed a counterclaim against Frankenmuth and asserted the following claims: breach of contract, breach of the enhanced duty of good faith, breach of the covenant of good faith and fair dealing, bad faith, and misrepresentation and

suppression. (Doc. # 20). All these claims stem from Frankenmuth's conduct leading up to and at the pre-suit Mediation.

Frankemuth moves to dismiss all counterclaims against it, arguing that the claims fail to state a claim upon which relief can be made, are not ripe, and violate Rule 9 of the Federal Rules of Civil Procedure. (Doc. # 27-1 at 1).

## II. Standard or Review

### A. Federal Rule of Civil Procedure 12(b)(6) Standard

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id*. at 555, 557. In deciding a Rule 12 (b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the "complaint must demonstrate 'more than a sheer possibility that a defendant has acted unlawfully.'" *Id*. A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal

evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that all the well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

### B.     Federal Rule of Civil Procedure 12(b)(1) Standard

Determinations about whether claims are ripe raise questions concerning subject matter jurisdiction. *Reahard v. Lee County*, 978 F.2d 1212, 1213 (11th Cir. 1992). A party may raise a defense of lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). The party asserting jurisdiction (*i.e.*, here, Frankenmuth) carries the burden of proof on such a motion. *Id.* "A federal district court is under a mandatory duty to dismiss a suit over which it has no jurisdiction." *Southeast Bank, N.A. v. Gold Coast Graphics Grp. Partners*, 149 F.R.D. 681, 683 (S.D. Fla. 1993) (*citing Stanley v. Central Intelligence Agency*, 639 F.2d 1146, 1157 (5th Cir. 1991); *Marshall v. Gibson's Prods., Inc. of Plano*, 584 F.2d 668, 671-72 (5th Cir. 1978); *see also Lifestar Ambulance Serv., Inc. v. United States*, 365 F.3d 1293, 1295 (11th Cir. 2004) (observing that a court may not proceed in the absence of subject matter jurisdiction).

A Rule 12(b)(1) motion may raise either a facial or factual attack. *Willett v. United States*, 24 F. Supp. 3d 1167, 1173 (M.D. Ala. 2014) (citing *McElmurray v. Consol. Govt. of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007)). "Facial attacks on the complaint 'require[] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1261 (11th Cir. 1997) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990)) (additional citations omitted). "Factual attacks" challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* In other words, when a party raises a factual attack to subject matter jurisdiction, the court is not obligated to take the allegations in the complaint as true, but may consider extrinsic evidence such as affidavits. *Odyssey Marine Exploration, Inc. v. Unidentified Shipwrecked Vessel*, 657 F.3d 1159, 1169 (11th Cir. 2011) (citations omitted).

## III.   Discussion

Frankenmuth argues that Taylor Burton's counterclaims should be dismissed for a variety of reasons. First, Frankenmuth argues that no claim is justiciable because Taylor Burton lacks standing and because the claims are not ripe. (Doc. # 27-1 at 4). Second, Frankenmuth argues that Taylor Burton has failed to plead special damages with particularity. (*Id.*). Third, Frankemuth attacks each claim on the basis that Taylor Burton has failed to state plausible claims. (*Id.* at 1). The court addresses each of these arguments in turn.

### A.   Justiciability of Claims

Frankenmuth argues that Taylor Burton lacks standing and that no claim is ripe because Taylor Burton has yet to incur "any actual, present damages" pending a resolution of the *Goolsby*

5

Lawsuit. (Doc. # 27-1 at 5). Taylor Burton, on the other hand, argues that it began to incur damages at the pre-suit Mediation – damages that it contends are not dependent upon resolution of the *Goolsby* Lawsuit. (Doc. # 32 at 8-9). While the court agrees that Taylor Burton has standing and that many of the claims are ripe, there is one exception: Taylor Burton's claims based on Frankenmuth's alleged failed to settle at the Mediation are not ripe.

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute[.]" *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Article III of the Constitution limits the jurisdiction of federal courts to adjudicating actual "Cases" and "Controversies." Art. III § 2. To determine whether a dispute satisfies Article III's case-or-controversy requirement, courts have established three justiciability doctrines, "[p]erhaps the most important" of which is the standing doctrine. *See Wooden v. Bd. of Regents of the Univ. Sys. of Ga.*, 247 F.3d 1262, 1273 (11th Cir. 2001). At an "irreducible constitutional minimum," the standing doctrine requires that a plaintiff have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). As an initial matter, because Frankenmuth does not challenge the second and third elements, the court focuses on whether Taylor Burton has sufficiently pleaded an injury-in-fact.

Where, as here, a plaintiff seeks retrospective relief, the plaintiff must show that he has suffered "an invasion of a legally protected interest" that is both "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Mack v. USAA Cas. Ins. Co.*, 994 F.3d 1353, 1356 (11th Cir. 2021) (quoting *Lujan*, 504 U.S. at 560). A "particularized" injury "affect[s] the plaintiff in a personal and individual way," while a "concrete" injury is one that "actually

exist[s]." *Spokeo*, 578 U.S. at 339-40 (internal citation omitted). At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice because, in dealing with motions to dismiss, courts "presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 497 U.S. at 889.

The question of ripeness often overlaps with a standing inquiry but is actually a separate justiciability doctrine. *Elend v. Basham*, 471 F.3d 1199, 1205 (11th Cir. 2006) ("[T]here may be standing without ripeness . . . or there may be ripeness without standing."). While standing focuses on injury in fact, causation, and redressability, ripeness evaluates "the hardship that a plaintiff might suffer without court redress and the fitness of the case for judicial decision." *Id.* at 1211. A claim is not ripe for adjudication if it rests upon "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal citation and quotation marks omitted).

Taylor Burton asserts that its factual allegations about the injuries it has suffered are sufficient to confer standing – *i.e.*, the loss of the benefit of the Policy for which it paid premiums, the loss of an adequate defense at the Mediation, and the loss of its opportunity to settle covered claims within Policy limits before litigation. (Doc. # 20 at 12-15). With respect to any injury stemming from the alleged failure to settle, Alabama law is clear: "a cause of action arising out of a failure to settle a third-party claim[1] made against the insured does not accrue unless and until the claimant obtains a final judgment in excess of the policy limits." *Evans v. Mut. Assur., Inc.*, 727 So. 2d 66, 67-68 (Ala. 1999) (collecting cases). *See also McNamara v. Gov't Emps. Ins. Co.*, 30

---

[1] This case involves a third-party claim as opposed to a first-party claim. *Compare Chavers v. Nat'l Sec. Fire & Cas. Co.*, 405 So. 2d 1, 5 (Ala. 1981) ("third party actions involv[e] ... recovery against the insurer in situations where the insurer wrongfully refuses, either negligently or intentionally, to settle the third party claim within policy limits and where, as a result, the insured incurs a judgment against him in an amount in excess of the policy") *with Evans*, 727 So. 2d at 68 (defining a first-party claim as one where "the insured alleged that the insurer had, in bad faith, refused to pay a legitimate claim made by the insured on his own policy.").

F.4th 1055, 1060 (11th Cir. 2022) (holding that, under Florida law, consent judgments also constitute excess judgments that can satisfy the causation requirement for bad-faith failure to settle claims). In other words, Alabama law dictates that whether Taylor Burton suffered damages as a result of Frankenmuth's failure to settle is contingent upon whether the *Goolsby* Lawsuit results in a judgment in excess of the Policy limits.

Here, there is no allegation that any judgment -- much less an excess judgment -- has been entered in the *Goolsby* Lawsuit. Because the *Goolsby* Lawsuit has not been fully adjudicated and because Frankenmuth is currently providing counsel to represent Taylor Burton in that suit, any injury claimed by Taylor Burton based on the alleged failure to settle is purely hypothetical. *Mack*, 994 F.3d at 1356. *See, e.g., Nationwide Mut. Ins. Co. v. E. Lake Elec. Co., Inc.*, No. 2:09-CV-00266-HGD, 2009 WL 10703735, at *1 (N.D. Ala. Aug. 6, 2009) (dismissing an insured's breach of contract and bad faith claims due to lack of standing and ripeness where there had been no determination of liability in the underlying lawsuit and the insurer was paying for an attorney to represent the insured). Accordingly, Taylor Burton's claims based on Frankenmuth's alleged failure to settle at the Mediation are not ripe at this stage of the litigation.

However, the same cannot be said with respect to whether Taylor Burton has incurred the other damages it has alleged – damages stemming from the loss of benefits of the Policy and the loss of an adequate defense at the Mediation. Whether Taylor Burton incurred damages based on an alleged failure to defend at the Mediation is not contingent upon a final judgment in the *Goolsby* Lawsuit. Those damages, if any, could have begun to accrue prior to or on the date of the Mediation. Under these circumstances, Taylor Burton's claims are justiciable to the extent that they are based on damages related to the loss of Policy benefits and loss of an adequate defense at the pre-suit Mediation.

### B.        Special Damages

Frankenmuth also argues that Taylor Burton's bad faith claim fails because it fails to aver special damages with particularity. (Doc. # 27-1). That is, Frankenmuth contends that Taylor Burton's allegations that it incurred damages due to a lack of an adequate defense at the Mediation and lost opportunity to settle are not specific enough to satisfy the Rule 8 pleading standard. (*Id.* at 7). The court disagrees. Even assuming that these claimed damages are special (rather than general) damages, Taylor Burton's allegations sufficiently inform Frankenmuth as to what claims it must be prepared to defend. *See Crommelin v. Montgomery Indep. Telecasters, Inc.*, 194 So. 2d 548, 551 (1967) ("Special damages must be pleaded in order to inform a defendant as to what claim he must be prepared to defend.").

### C.        Failure to State a Claim

Frankenmuth argues that Taylor Burton's counterclaims are due to be dismissed because they fail to state a claim. The court addresses these arguments below.

#### 1.        Breach of Contract Claim

Taylor Burton has alleged that Frankenmuth failed to perform under the contract (*i.e.*, the Policy) when it failed to "to defend Taylor Burton at the Mediation." (Doc. # 20 at 11). Taylor Burton further alleges that Frankenmuth failed to retain defense counsel on Taylor Burton's behalf, apprise Taylor Burton of its coverage position, and meaningfully participate in settlement negotiations. (Doc. # 20 at 11-12). Frankenmuth contends that Taylor Burton cannot state a claim for a breach of contract because Frankenmuth was not required to defend Taylor Burton at the pre-suit Mediation. (Doc. # 27-1 at 9-10). In other words, Frankenmuth argues that Taylor cannot show that Frankenmuth failed to perform under the contract, which is a requisite element in a breach of contract action. *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009) (noting that to state

9

a claim for breach of contract, a plaintiff must show: (1) a valid contract binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages).

Frankenmuth essentially argues that it could not have failed to perform because an insurer's duty to defend does not arise before a complaint is filed against its insured. (Doc. # 27-1 at 9-10). Taylor Burton points to the proposition that "an insurance company's duty to defend its insured is determined by the language of the insurance policy and by the allegations in the complaint giving rise to the action against the insured." *Ajdarodini v. State Auto Mut. Ins. Co.*, 628 So. 2d 312, 313 (Ala. 1993). *See also Tanner v. State Farm Fire & Cas. Co.*, 874 So. 2d 1058, 1063 (Ala. 2003); *U.S. Fid. & Guar. Co. v. Armstrong*, 479 So. 2d 1164, 1168 (Ala. 1985) ("[T]he duty to defend arises when the original complaint alleges a state of facts within the coverage of the policy."). When read in context, however, none of the cases cited by Frankemuth address whether the duty to defend could arise before the filing of a complaint. For example, the *Ajdarodini* court analyzed the duty to defend the insured against a lawsuit that had already been filed. 628 So. 2d at 313. The same is true with respect to *Tanner*, 874 So. 2d at 1063 and *Armstrong*, 479 So. 2d at 1168. To be sure, the court is not aware of any Alabama or Eleventh Circuit caselaw that has expressly held that the duty to defend arises *only* after the filing of a complaint. At this early point in the litigation, the court cannot conclude there is a blanket rule indicating there could never be any pre-suit duty to defend.[2] So, the court cannot say as a matter of law that Taylor Burton cannot pursue this claim. Nor can it say that Taylor Burton has not plausibly alleged such a duty existed here. That is, the

---

[2] At least one state Supreme Court has found that a pre-suit mediation did constitute a "suit" for purposes of triggering the insurer's duty to defend based on nearly identical policy language. *See, e.g., Farmers Ins. Exch. v. Johnson*, 224 P.3d 613 (Mont. 2009). Of course, that decision is not controlling.

court concludes that Taylor Burton has plausibly alleged that the pre-suit Mediation constitutes a "suit" such that Frankenmuth was obligated to defend Taylor Burton at the Mediation.

Taylor Burton has pointed to the Commercial General Liability Coverage provision of the Policy as the source of this duty. That provision provides that Frankenmuth "will have the right and duty to defend the insured against any 'suit'" seeking damages for "bodily injury" or "property damage." (Docs. # 8-2 at 3; # 33-1 at 2). "Suit," according to the policy, "means a civil proceeding in which damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged." (Doc. # 33-1 at 3). The policy further explains that "suit" includes "[a]ny other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent." (*Id.*). Whether "suit" includes a mediation that occurs before a lawsuit is filed is a matter of contract interpretation, which generally is beyond the scope of ruling on a motion to dismiss. *See BioHealth Med. Lab'y, Inc. v. Cigna Health & Life Ins. Co.*, 706 F. App'x 521, 524 (11th Cir. 2017) (internal citation and quotation marks omitted) ("The Court may not engage in contract interpretation at the motion to dismiss stage, as these arguments are more appropriate for summary judgment."). So, the court cannot say that Plaintiff has not plausibly alleged that the pre-suit Mediation was an "alternative dispute resolution" that Frankenmuth was obligated to defend.

### 2.     Breach of Enhanced Duty of Good Faith Claim

Taylor Burton has also alleged that Frankenmuth breached the enhanced duty of good faith in its defense of Taylor Burton. (Doc. # 20 at 12-13). The Alabama Supreme Court has recognized this enhanced obligation and explained that "when an insurance company undertakes a defense pursuant to a reservation of rights, it does so under an 'enhanced obligation of good faith' toward its insured in conducting such a defense." *Aetna Cas. & Sur. Co. v. Mitchell Bros., Inc.*, 814 So.

2d 191, 195 (Ala. 2001); *L & S Roofing Supply Co., Inc. v. St. Paul Fire & Marine Ins. Co*., 521 So. 2d 1298, 1303 (Ala. 1988).

Frankenmuth argues that no enhanced obligation attached at the time of the Mediation because Taylor Burton had not yet filed a lawsuit. (Doc. # 27-1 at 12). *L&S Roofing Supply Co. v. St. Paul Fire & Marine Ins. Co.* is the "seminal case" addressing an insurer's enhanced good faith obligation. In *L&S Roofing*, the Alabama Supreme Court explained that to fulfill this enhanced duty, an insurer must: (1) thoroughly investigate the cause of the insured's accident and the nature and severity of the plaintiff's injuries; (2) retain competent defense counsel for the insured with the understanding that only the insured is the client; (3) fully inform the insured of any reservation-of-rights defense and all developments relevant to his policy coverage and the progress of the lawsuit; and (4) refrain from engaging in any action which would demonstrate a greater concern for the insurer's monetary interest than for the insured's financial risk. 521 So. 2d at 1303 (citing *Tank v. State Farm Fire & Cas. Co*., 715 P.2d 1133, 1137 (1986)). Notably, Frankenmuth specifically highlights the third criterion as an indication that a lawsuit must exist in order for the duty to arise.

In 1990, the Alabama Supreme Court addressed the enhanced obligation of good faith in *Shelby Steel Fabricators, Inc. v. U.S. Fid. & Guar. Ins. Co.*, 569 So. 2d 309, 313 (Ala. 1990). The *Shelby Steel* court spoke about the enhanced duty in terms of an insurer's enhanced duty to conduct a defense of a "case," rather than a "lawsuit." *Shelby Steel*, 569 So. 2d at 313 (emphasis added) ("[T]he obligation now placed on insurance companies is not an onerous one. It merely requires that if an insurer intends to defend <u>a case</u> pursuant to a . . . reservation of rights, then that insurer not only must provide notice to its insured of that fact, but also must keep its insured informed of the status of the <u>case</u>.") (emphasis added). It does not appear that either the Alabama Supreme

Court or the Eleventh Circuit have expressly limited the enhanced obligation to matters in traditional litigation. Like the issue of whether a pre-suit Mediation constitutes a "suit" under the Policy, the issue of whether the enhanced duty applies to such a "suit" is not a question the court will (or should) address at this juncture.

Absent such clarity at the motion to dismiss stage, Taylor Burton has plausibly stated a claim of breach of the enhanced duty of good faith and fair dealing. Taylor Burton has alleged that Frankenmuth asserted a reservation of rights in a letter issued on November 24, 2020. (Docs. # 32 at 11; # 8-2) ("Please allow this letter to serve as a reservation of rights relative to coverage for the claims made by . . . Ryan Goolsby ["Goolsby"] against Taylor Burton."). Moreover, Taylor Burton has alleged that Frankenmuth breached the enhanced duty by failing to retain defense counsel and to adequately explain coverage issues. (Doc. # 20 at 8). That Frankemuth allegedly never responded to the demand bolsters the contention that Frankenmuth was ultimately more concerned with its own interests. But again, it is not for the court to evaluate these issues now. It is sufficient to say that these allegations plausibly allege a claim for a breach of the enhanced duty of good faith.

### 3.     Duty of Good Faith and Fair Dealing Claim

Taylor Burton has alleged that Frankenmuth breached the covenant of good faith and fair dealing by failing to (1) investigate Goolsby's claims before the Mediation, (2) issue an adequate reservation-of-rights letter identifying the relevant coverage issues before the Mediation, (3) retain defense counsel to adequately represent their interests at the Mediation, and (4) participate meaningfully in settlement negotiations during the Mediation. (Doc. # 20 at 13). Taylor Burton further alleges that it incurred damages from this breach by not receiving the benefits of the Policy

for which it paid premiums, including having an adequate defense at the Mediation and losing the opportunity to settle with Goolsby before litigation. (*Id.*).

Frankenmuth's argument for dismissal mirrors that presented in favor of dismissing the breach of contract claim – *i.e.*, that it could not have breached the duty of good faith and fair dealing because it did not owe any duties to Taylor Burton before a lawsuit had been filed. (Doc. # 27-1 at 9-11). That argument, as the court has already concluded, is off the mark at the motion to dismiss stage. Thus, the court turns to whether Taylor Burton has factually alleged a plausible claim for relief.

In every contract, an implied covenant of good faith and fair dealing exists. *Hoffman-LaRoche, Inc. v. Campbell*, 512 So. 2d 725, 738 (Ala. 1987); Restatement (Second) of Contracts § 205 (1981). To prevail on a breach of an implied covenant of good faith and fair dealing claim, a plaintiff must show (1) the existence of a valid contract and (2) a party's interference with the rights of another to receive the benefits of the contract. *Goostree v. Liberty Nat'l Life Ins. Co.*, 421 F. Supp. 3d 1268, 1276 (N.D. Ala. 2019) (citing *Chavers*, 405 So. 2d at 4).

Here, Taylor Burton has alleged that the Policy was a valid contract. (Doc. # 20 at 13). Taylor Burton has also alleged that Frankenmuth interfered with rights available to him pursuant to the Commercial General Liability Coverage provision of the Policy, which it claims entitled it to a defense against any 'suit'" seeking damages for "property damage." (Docs. # 8-2 at 3; # 33-1 at 2). While the Policy does not define what specific obligations constitute a defense, Taylor Burton has plausibly alleged that it had the rights to have its insurer investigate the claims asserted against it and to receive an adequate reservation-of-rights letter prior to a mediation, to retain defense counsel on its behalf, and to have its insurer participate meaningfully in settlement negotiations. Because Taylor Burton has identified rights allegedly conferred by the Policy, the

14

source of those rights, and how Frankenmuth allegedly interfered with those rights (prior to and at the Mediation), the court concludes that Taylor Burton's claim for breach of the duty of good faith and fair dealing has been adequately pleaded.

### 4.    Bad Faith Claim

Taylor Burton's bad faith claim is premised upon Frankenmuth's alleged failure to "investigate Goolsby's claims prior to the Mediation" and to "participate meaningfully in settlement negotiations during the Mediation." (Doc. # 20 at 14). Taylor Burton asserts that Frankenmuth had six months from the receipt of Goolsby's settlement demand to investigate Goolsby's claims and to retain defense counsel for it, but failed to do so. (*Id.*). Moreover, Taylor Burton also alleges that Frankenmuth did not issue a reservation of rights letter that adequately identified the relevant coverage issues prior to the Mediation. (*Id.*). All of Frankenmuth's conduct, Taylor Burton claims, was "tantamount to an intentional refusal to pay a claim." (Doc. # 20 at 14).

Frankenmuth argues that Taylor Burton has failed to state a plausible bad faith claim because Taylor Burton has not sued for breach of contract. This is incorrect. Count One of the Counterclaim clearly asserts -- and plausibly so -- that Frankenmuth breached the Policy. (Doc. # 20 at 11). Frankenmuth also argues that the bad faith claim fails because it has never denied coverage. (Doc. # 27-1 at 6). However, Taylor Burton's bad faith claim is not premised upon denial of coverage. Rather, the claim is premised upon on a bad faith failure to investigate and the bad faith failure to pay.

The Supreme Court of Alabama has clarified that "there is only one tort of bad-faith refusal to pay a claim, not two 'types' of bad faith or two separate torts." *State Farm Fire & Cas. Co. v. Brechbill*, 144 So. 3d 248, 257-58 (Ala. 2013); *Nat. Ins. Ass'n v. Sockwell*, 829 So 111, 126-30 (Ala. 2002). To make out a bad faith claim, a plaintiff must establish (1) the existence of an

insurance contract; (2) the insurer's breach of the contract; (3) an intentional refusal to pay the claim; and (4) the absence of a "debatable reason" for the refusal to pay. E*x parte Alfa Mut. Ins. Co.*, 799 So. 2d 957, 962 (Ala. 2001); *Brechbill*, 144 So. 3d at 258 ("Regardless of whether the claim is a bad-faith refusal to pay or a bad faith refusal to investigate, the tort of bad faith requires proof of the third element, absence of legitimate reason for denial."). A plaintiff alleging the tort of bad faith bears the burden of establishing each element of the claim. *Shelter Mutual Ins. Co. v. Barton*, 822 So. 2d 1149, 1154 (Ala. 2001) (citations omitted) ("The Plaintiff asserting a bad-faith claim bears a heavy burden."). In addition, a plaintiff asserting an "abnormal" bad faith claim must establish that the insurer "(1) intentionally or recklessly failed to investigate the plaintiff's claim; (2) intentionally or recklessly failed to properly subject the plaintiff's claim to a cognitive evaluation or review; (3) created its own debatable reason for denying the plaintiff's claim; or (4) relied on an ambiguous portion of the policy as a lawful basis to deny the plaintiff's claim." *Sockwell*, 829 So. 2d at 129-30.

To the extent Taylor Burton's bad faith claim is based on Frankenmuth's refusal to settle at the Mediation (or before it), the court has already determined that such a claim is not ripe pending a resolution in the *Goolsby* Lawsuit. But here, Taylor Burton's bad faith claim is based on more than just a failure to pay. Taylor Burton also asserts that Frankenmuth is liable based on a bad faith failure to investigate. At this juncture, the question becomes whether Frankenmuth has plausibly pleaded a bad faith failure-to-investigate claim. The court concludes that it has.

Taylor Burton claims that Frankenmuth breached the Policy in a variety of ways. As to the third element, Taylor Burton has alleged that Frankenmuth received the $450,000 demand from Goolsby in August 2020, yet still had not determined what claims were covered by the time of the Mediation six months later or otherwise provided Taylor Burton with defense counsel. The

Counterclaim Complaint also alleges that Frankenmuth never presented a counteroffer nor did it make any attempt to negotiate a settlement of potentially covered claims at the Mediation. (Doc. # 20 at 10). Frankenmuth has not presented any argument on this issue. In any event, the court concludes that on the face of the Counterclaim Complaint, it is plausible that Frankenmuth's total lack of response to a demand constitutes an intentional refusal to pay its insured's claim. This is another issue that must be addressed in discovery (after which the parties may revisit the court).

As to the fourth element, Taylor Burton has alleged there is "no arguable or reasonable basis for Frankenmuth's conduct in evaluating and responding to Goolsby's settlement demand." (Doc. # 20 at 24). Taylor Burton points to the three letters Frankenmuth provided to it between receipt of the demand and the Mediation. (Doc. # 20 at 9). Taylor Burton alleges that Frankenmuth "did not delineate or otherwise elaborate on its position as to which claims were covered versus uncovered." (*Id.*). Given the lack of clarity as to coverage and the amount of time Frankenmuth took in examining these matters, it is plausible that Frankenmuth did not have a reasonably legitimate or arguable reason for "refusing to pay" Goolsby prior to litigation. Finally, Taylor Burton has alleged -- and the court agrees -- that Frankenmuth's actions (or inactions) leading up to and at the Mediation could qualify as an intentional failure to investigate Goolsby's claim. Of course, whether the bad faith claim survives summary judgment, particularly given the "heavy burden" Taylor Burton faces in advancing that claim, *Shelter Mutual*, 822 So. 2d at 1154, is a matter the court reserves for another day.

### 5.    Misrepresentation and Suppression Claims

Taylor Burton has also alleged that Frankenmuth is liable for misrepresentation and/or suppression because Frankenmuth falsely represented that it would defend Taylor Burton's interests with respect to covered claims at the Mediation. (Doc. # 20 at 15). Taylor Burton contends

that it was damaged when it (1) did not receive the benefits of the Policy for which it paid premiums, (2) was not afforded an adequate defense, and (3) lost the opportunity to settle before Goolsby filed a lawsuit. (*Id.*).

To prevail on a fraudulent misrepresentation claim, a plaintiff must plausibly allege (1) a false representation (2) concerning a material existing fact (3) reasonably relied upon by the plaintiff (4) who was damaged as a proximate result. *Fisher v. Comer Plantation, Inc.*, 772 So. 2d 455, 463 (Ala. 2000). A plaintiff asserting a fraudulent suppression claim must plausibly allege that (1) the defendant had a duty to disclose material facts, (2) the defendant concealed or failed to disclose those facts, (3) that the concealment or failure to disclose those facts induced the plaintiff to act or refrain from acting, and (4) the plaintiff suffered actual damage as a proximate result. *Keck v. Dryvit Sys. Inc.*, 830 So. 2d 1, 11 (Ala. 2002).

Moreover, a pleading asserting a claim of misrepresentation is subject to the heightened pleading standard of Rule 9(b). *See Hartford Fire Insurance Company v. Alabama Pain Center, LLC*, 2018 WL 7286500, at *2-3 (applying Rule 9(b) to a misrepresentation claim under Alabama law in a diversity action). Rule 9(b) of the Federal Rules of Civil Procedure mandates that in all claims of fraud, "a party must state with particularity the circumstances constituting fraud . . .," but "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Rule 9(b) "does not require courts to credit a complaint's conclusory statements without reference to its factual context." *Iqbal*, 556 U.S. at 665. And in this context, Rule 9(b) requires a plaintiff to allege (1) the precise statements, documents, or misrepresentations made, (2) the time, place, and person responsible for the statement, (3) the content and manner in which these statements misled the plaintiff, and (4) what the defendants

gained by the alleged fraud. *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010).

In its Counterclaim, Taylor Burton has sufficiently pleaded a misrepresentation claim pursuant to Rule 9(b). Taylor Burton has alleged that in Frankenmuth's first coverage letter, dated November 24, 2020, Frankenmuth promised to "undertake to resolve those covered claims/damages." (Doc. # 20 at 9). Taylor Burton also alleges that coverage counsel for Frankenmuth advised in writing that "she would attend the Mediation with authority to resolve any covered claims and/or damages." (*Id.*). At the Mediation, however, Taylor Burton claims that Frankenmuth did not make any attempt to negotiate a settlement of potentially covered claims. (*Id.*). These allegations satisfy the heightened pleading requirements.

The suppression claim is a different matter though. The court concludes that Taylor Burton has failed to plausibly state a suppression claim. There are simply no allegations in Taylor Burton's Counterclaim Complaint suggesting that Frankenmuth concealed or failed to disclose facts it had a duty to disclose. Rather, the allegations contained in Count Five base liability exclusively on affirmative representations Frankenmuth allegedly made. There are no allegations that plausibly plead a suppression claim. Accordingly, Taylor Burton has not plausibly stated a claim for suppression.

## IV.    Conclusion

After appropriate discovery takes place, the parties will have another opportunity to address the question of whether Frankenmuth had a duty to defend in this case. But, even if it did, several other key questions must be answered. When did such a duty arise in this case? In this context, what obligations fall within a "duty to defend"? What is the scope of those obligations? Absent answers to all these questions, at this stage of the litigation, the court is not in a position to dismiss

Taylor Burton's claims that are premised, in whole or in part, on Frankenmuth's alleged failure to defend at the pre-suit Mediation.[3]

For the reasons stated above, Defendant Frankenmuth's Motion to Dismiss Plaintiffs' Counterclaims (Doc. # 27) is due to be granted in part and denied in part.

A separate order in accordance with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this August 22, 2022.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE

---

[3] Again, the court remains convinced that any claim based on Frankenmuth's alleged failure to settle at the pre-suit Mediation is not ripe and, thus, is due to be dismissed.